410 So.2d 1365 (1982)
Bernard R. BLAIS, Appellant,
v.
Violet V. BLAIS, Appellee.
No. 80-957.
District Court of Appeal of Florida, Fifth District.
March 17, 1982.
*1366 James S. Byrd, Orlando, for appellant.
Michael E. Hamlin, Winter Park, for appellee.
SHARP, Judge.
The husband, appellant, raises six points in his appeal from a final judgment of dissolution: (1) the court erred in awarding the wife lump sum alimony; (2) the court erred in awarding the wife permanent periodic alimony; (3) the court erred in ordering that the permanent periodic alimony payments commence June 1, 1980, when the final judgment was not reduced to writing and filed until July 1980; (4) the court erred in holding the husband responsible for a joint debt of the parties; (5) the trial judge erred in requiring the husband to maintain certain life insurance policies for the benefit of the wife; (6) the trial judge erred in failing to enter an order regarding the disposition of family property titled in the name of the wife. We find that error occurred in this case only with regard to point five.
At the time of the dissolution, the parties had been married for thirty-five years. The wife was fifty-four years old and for the first twenty-five years of marriage she had remained in the home to raise the parties' five children. Since 1969 she had been working as a registered nurse. Her net income at the time of these proceedings was approximately two hundred dollars ($200.00) per week. She suffered from a hearing impairment and had a history of some abuse of alcohol. At the time of the dissolution the husband was fifty-seven years old. He was employed as a construction engineer with the federal government, earning a net income of approximately four hundred twenty-seven dollars per week.
The record shows the parties jointly owned the following assets: a condominium unit with an estimated value of forty thousand dollars ($40,000) subject to an outstanding mortgage of twenty thousand dollars ($20,000); a house worth between forty and fifty thousand dollars ($40,000-$50,000),[1] subject to a twenty-one thousand dollar mortgage ($21,000); two motor vehicles; and some jointly-owned securities with a fair market value of approximately three thousand dollars ($3,000). The husband had in his name a lien free forty-five foot sailboat *1367 which represented an investment of some fifty-two thousand dollars ($52,000)[2] and a motorboat worth two thousand five hundred dollars ($2,500). These were acquired with funds or assets earned during the marriage. The wife also held in her sole name a one-thirtieth (1/30) interest in a parcel of real property which was a gift to her from the husband's family.[3]
The trial court awarded the wife two hundred fifty dollars ($250) per month in permanent periodic alimony and the husband's interests in the condominium and the house, subject to existing mortgages, as lump sum alimony. The trial judge left the securities in joint ownership and the one-thirtieth (1/30) interest in the real property in the wife's sole name. Further, the trial judge ordered the husband to maintain certain life insurance policies for the benefit of the wife and required the husband to hold the wife harmless for a joint debt in the amount of one thousand six hundred dollars ($1,600) owed to Sun Bank. The wife was also awarded a 1980 Buick, which is subject to a substantial security lien.[4] It awarded the husband the forty-five foot sailboat, the sixteen foot motorboat, and the lien-free 1975 Dodge van.

POINT I
We find the trial court did not err in awarding the husband's interests in the condominium and the house, subject to existing mortgages, as lump sum alimony to the wife. The two parcels are worth "net" approximately forty thousand dollars ($40,000), considering existing mortgages of some forty-one thousand dollars for which the wife is responsible. Further, the husband was not stripped of all of his assets, since he retained ownership of the sailboat and motorboat, worth fifty-four thousand five hundred dollars ($54,500). In view of the duration of this marriage, the disparity in the parties' earning capacity and the relative health of the parties, the award does not appear inequitable. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).

POINT II
The permanent alimony award of two hundred fifty dollars ($250) per month is well within the trial court's reasonable exercise of discretion for the same reasons stated at Point I. See Canakaris; McAllister v. McAllister, 345 So.2d 352 (Fla. 4th DCA 1977), cert. denied, 357 So.2d 186 (1978).

POINT III
We find no reversible error in the trial court's commencing the husband's permanent periodic alimony obligation prior to the filing of the written final judgment of dissolution. Alimony is generally awarded to provide support to a financially needy former spouse. Kirchman v. Kirchman, 389 So.2d 327 (Fla. 5th DCA 1980). If a spouse needs support prior to the dissolution the trial court can award temporary support.[5] We recognize that a trial court has the discretion to make a modification in alimony retroactive to the time of filing the petition for modification.[6] Absent a legislative mandate, we decline to extend that discretionary authority to the initial alimony award. However, in this case at the conclusion of the final hearing on May 15, 1980, the court ruled it was awarding the wife two hundred fifty dollars ($250) per month periodic alimony. Therefore, it had inherent power to render its judgment nunc pro tunc as of the time the case was submitted to it for determination. Becker v. *1368 King, 307 So.2d 855 (Fla. 4th DCA), cert. dismissed, 317 So.2d 76 (1975).

POINT IV
We find the trial court did not err in holding the husband responsible for the parties' joint debt in the amount of one thousand six hundred dollars ($1,600). The debt was a loan taken out for the purpose of purchasing the husband's sailboat and it was secured by the parties' jointly-owned securities. Since the husband received this asset in the dissolution he should have full responsibility for the debt related to it.

POINT V
We find the trial court erred in requiring the husband to maintain the wife as an irrevocable beneficiary on his life insurance policy with U.S. Government Insurance. In Eagan v. Eagan, 392 So.2d 988 (Fla. 5th DCA 1981), we recognized:
Since a trial judge cannot ordinarily award alimony to continue after death, provisions of dissolution judgments requiring the maintenance of life insurance for the benefit of a former spouse have been condemned as being tantamount to postmortem alimony.
392 So.2d at 989. Because the husband did not agree to maintain the U.S. Government insurance policy for the benefit of his wife that provision is improper.[7]
The status of the policy referred to by the parties as "G.I. term insurance" is more difficult. The record reflects that as to the "G.I. term insurance" the appellant offered and agreed in open court to maintain it for the wife's benefit. Accordingly, we affirm the trial court award as to the "G.I. term insurance policy."
In view of the United States Supreme Court's recent decision in Ridgway v. Ridgway, ___ U.S. ___, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), we recognize a husband's agreement to maintain a "G.I. term insurance policy" for the benefit of his wife may be an illusory benefit. In Ridgway the Court held that the provisions of the Servicemen's Group Life Insurance Act of 1965 afforded the service member the right freely to designate the beneficiary and alter that choice, and that this federal law prevailed over inconsistent state law. Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950) holds an insured has a similar right pursuant to the provisions of the National Service Life Insurance Act of 1940. Thus, a trial court's judgment incorporating a party's agreement to keep these kinds of insurance policies in effect for the benefit of a former spouse may not be enforceable. In this case the exact nature of the "G.I. term insurance policy" is not reflected by the record. We are unable to determine whether the disposition of that policy would be affected by Ridgway and Wissner or not.
In light of Eagan we strike only that portion of paragraph eight relating to the U.S. Government Insurance Policy and remand. The trial court may, in its discretion, modify the support award as necessary to effectuate the original plan based on the record or on additional evidence as deemed necessary.[8]

POINT VI
We find no reversible error in the trial court's refusal to make a disposition of the one-thirtieth (1/30) interest in real property titled in the wife's name. The record shows no special right or equity of the husband in this asset and no basis for an alimony award to him.
*1369 As modified by this opinion, the final judgment is affirmed and the cause remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
DAUKSCH, C.J., and COWART, J., concur.
NOTES
[1] The wife estimated the value of the house at forty thousand dollars ($40,000); the husband states that it is worth closer to fifty thousand dollars ($50,000); however, the uncontroverted testimony of the wife is that no maintenance has been done on the house in fifteen (15) years. The house is in serious disrepair and needs fifteen thousand dollars ($15,000) in repairs.
[2] The husband admits investing some fifty-two thousand dollars ($52,000) in the sailboat; however, he was noncommittal regarding the reasonable market value of the sailboat.
[3] The husband testified that the whole parcel is worth one hundred seventy-seven thousand dollars ($177,000). The value of a one-thirtieth (1/30) undivided interest is unknown.
[4] The final judgment describes the car as a 1970 Buick; the record shows the car to be a 1980 model.
[5] § 61.071, Fla. Stat. (1979).
[6] McArthur v. McArthur, 106 So.2d 73 (Fla. 1958); Brisco v. Brisco, 355 So.2d 506 (Fla. 2d DCA 1978).
[7] Cf., O'Malley v. Pan American Bank of Orlando, 384 So.2d 1258 (Fla. 1980) (The obligation to pay alimony ceases upon death of the obligor unless that person agrees otherwise). Depending upon the circumstances a beneficial interest in a life insurance policy may well constitute an equitable division of property rather than an alimony award. See Fla.Jur.2d Insurance § 907 (1981). However, in this case it is obvious the trial court intended that the insurance proceeds serve as a "res" to secure alimony payments in the event the husband predeceases the wife.
[8] See Eagan v. Eagan, 392 So.2d 988 (Fla. 5th DCA 1981); Bradley v. Bradley, 327 So.2d 253 (Fla. 4th DCA 1976).